# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE DEANGELO, | ) |
| | ) |
| Plaintiff, | ) 2:13-cv-407 |
| | ) |
| v. | ) |
| | ) |
| NORTH STRABANE TOWNSHIP AND DAN STRIMEL *in his official capacity as the CHIEF OF POLICE OF NORTH STRABANE TOWNSHIP*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS COUNT I OF THE PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE RULES OF CIVIL PROCEDURE (ECF No. 6) with brief in support (ECF No. 7) filed by Defendant Dan Strimel, in his individual and official capacity as Chief of Police of North Strabane Township, and Defendant North Strabane Township. Plaintiff Dale DeAngelo filed a response to the motion (ECF No. 10) with a brief in opposition (ECF No. 11). Accordingly, the motion is ripe for disposition.

### I. Background

The following background is drawn from the Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

The actions leadings up to this Complaint began sometime around July 2012 when Plaintiff sought to engage in target practice with his firearms on a tract of industrial property he privately owns in North Strabane Township. The 185 foot by 82 foot tract is located approximately five-hundred yards from Interstate 79 North Exit #45, commonly referred to as

the "Cannonsburg Exit." One side of the land faces I-79, but lies roughly eighty feet below the highway with a sixty-foot tall hillside separating the two areas. The land is accessible only by foot and does not contain any roads, paths, or lanes that allow for ingress or egress. According to Plaintiff, if he were to discharge a firearm projectile toward the direction of the sixty-foot tall hillside, there would be no danger of a ricochet or fragmentation striking any motorist, person, or property.

Sometime before July 2012, Plaintiff apparently "made arrangements and took all necessary and reasonable precautions to ensure that discharging firearms and engaging in target practice on the land would be done in a safe and reasonable manner." (ECF No. 1 at 4). Among his preparations, Plaintiff examined "all relevant Commonwealth statutes, [ ] local ordinances, and relevant regulations" that govern his intended activities. From his reading, Plaintiff concluded that he was legally permitted to discharge firearms on his land.

Plaintiff likewise attempted to contact law enforcement officials from North Strabane Township and the neighboring Borough of Canonsburg to alert them of his intent to "lawfully discharge firearms" on his property. Plaintiff first attempted to contact Defendant Strimel in July 2012 to place North Strabane police officers on notice regarding his target shooting should they receive reports of gunshots in the area. Strimel was unavailable at that time, and Plaintiff left a message requesting a return call. Plaintiff also reached out to Canonsburg Police Department Chief R.T. Bell to make him similarly aware of his intended target shooting given the close proximity between the industrial land and the Borough. During their discussion, Bell stated that he would pass along the information to Strimel who would likely call Plaintiff in the near future.

On August 6, 2012, Strimel contacted Plaintiff by telephone to discuss his intended target shooting. During this call, Strimel allegedly acknowledged that he was unaware if any local

2

ordinances or state laws prohibited the Plaintiff from target shooting. Strimel nonetheless informed Plaintiff that he would promptly be placed under arrest if he discharged a firearm on his land. Plaintiff attempted to explain that other persons or property would not be placed in any danger due to the precautions in place and the landscape of the property, but apparently to no avail. Strimel instead advised that he would charge Plaintiff with a crime, possibly "Recklessly Endangering Another Person," irrespective of whether the target shooting was done in a safe and lawful manner. Plaintiff made one final attempt to persuade Strimel that no persons would be endangered; however, Strimel again instructed that he would file charges and retorted that "we will let the courts decide." (ECF No. 1 at 6).

Plaintiff thereafter consulted with his counsel of record to evaluate his legal options. Plaintiff's attorney contacted the Solicitor for North Strabane (*i.e.*, opposing counsel of record) in December 2012 who reiterated Strimel's position that Plaintiff would be criminally charged if he discharged a firearm on the property. This lawsuit followed.

Plaintiff commenced this action on March 19, 2013 by filing a one-count Complaint in this Court, alleging violations of his Second Amendment and Fourth Amendment rights secured by the United States Constitution and made applicable to the States by the Fourteenth Amendment and violations of the corresponding provisions set forth in Article I, §§ 8 and 21 of the Pennsylvania Constitution. Aside from money damages, Plaintiff's requested relief includes a judgment prohibiting Defendants "from prosecuting and/or harassing and/or punishing" Plaintiff for discharging a firearm on his property. Defendants filed a Rule 12(b)(6) motion to dismiss in which they seek dismissal of the entire Complaint—a request Plaintiff opposes.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a

complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the

court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6), and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain

5

statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

The filings in this case present a host of issues that the Court must first address. As the Court reads the Complaint, Plaintiff couches no less than five alleged constitutional violations under the umbrella of a single count and asserts them en masse against both named Defendants. Defendants' motion to dismiss fares no better. Aside from citing a handful of non-binding cases in the boilerplate standard of review that spans the majority of their brief, Defendants offer no legal authority to support their motion to dismiss. Defendants instead inject facts from outside of the Complaint and submit that "Plaintiff cannot merely allege facts in a complaint that will be proven through additional discovery but must allege the same that standing alone in the complaint form a legal claim." (ECF No. 7 at 4). Defendants also never address the declaratory and injunctive relief sought. Plaintiff responds in a similar fashion, operating under the "no set of facts" language conceived in *Conley v. Gibson* and retired by *Twombly*.

Given this style of pleading and briefing, the Court is constrained to parse through the averments and address each principle in turn. For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

### A. The Fourth Amendment to the United States Constitution & Article I, § 8 of the Pennsylvania Constitution

Plaintiff avers that Strimel violated his rights protected by the Fourth Amendment and its state-level analog. From his perspective, a cognizable constitutional claim arose when Defendant(s) "*made unreasonable threats* of conducting an unreasonable search and seizure of his person, threatened to arrest him without reasonable cause or suspicion [*sic*], and threatened to cause [him] to defend his self in a Pennsylvania criminal court of law without cause." (ECF No. 1 at 2) (emphasis added). The Court does not agree.

The Fourth Amendment and Article I, § 8 both protect against unreasonable searches and seizures. But the threat to violate those protections alone does not give rise to an actual deprivation of a protected right. *See Butitta v. Carbajal*, 116 F.3d 1485 (9th Cir. 1997) ("'[Defendants] threat[ ], over the telephone, to seize a motorcycle in [Plaintiff's] possession and to arrest her without a warrant does not implicate a deprivation of a federally-protected right because a 'threat to do an act prohibited by the Constitution is [not] equivalent to doing the act itself.'") (quoting *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987)); *Brown v. Sweeney*, 526 F. Supp. 2d 126, 132 (D. Mass. 2007) ("Generally, a mere oral threat of an arrest by a police officer absent any other factual allegations does not constitute such a 'seizure.'"); *Dick v. Gainer*, 97 C 8790, 1998 WL 214703, at *5 (N.D. Ill. Apr. 23, 1998), *aff'd*, 172 F.3d 52 (7th Cir. 1998) ("There is no constitutional right to be free from threats of arrest; an actual civil rights violation must occur before a cause of action arises under § 1983."). Therefore, the Court will dismiss the claims arising under the Fourth Amendment and its state-law counterpart from the Complaint. The Court will not permit Plaintiff to proceed under this theory should he file an Amended Complaint because it would be futile.

**B. The Second Amendment to the United States Constitution & Article I, § 21 of the Pennsylvania Constitution Against Strimel**

Plaintiff also alleges that Strimel violated his rights protected by the Second Amendment and its state-level analog. The Court will address the individual and official capacity aspects of this claim seriatim.

1. Individual Capacity

The scope of the right to bear arms in places beyond the home post-*Heller* has been described as a "vast terra incognita" which has troubled courts since that case was decided. *See United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (Wilkinson, J., as to Part III.-B.)); *c.f. Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) ("[W]e decline to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home, the 'core' of the right as identified by *Heller*. We do, however, recognize that the Second Amendment's individual right to bear arms *may* have some application beyond the home.") (emphasis in original). Resolution of the challenge to the alleged violation(s) of the Second Amendment and its state analog thus presents more difficult questions than the earlier inquiry.

A fair reading of the Complaint indicates that Plaintiff presents a novel theory in this realm, namely that the threat of arrest by a lone individual "chilled" his right to bear arms when no statute prohibited his use or carry of a firearm. *C.f. Maslow v. City of Atl. City*, CIV.A. 08-3618 JEI, 2011 WL 4859286, at *4 (D.N.J. Oct. 12, 2011) ("The Second Amendment generally has been used to challenge statutes criminalizing the possession of firearms by a class of people."). Moreover, Plaintiff's fairly expansive reading of that protection embraces (or perhaps presupposes) the notion that the right to target shooting is constitutionally secured.[1] The concept

---

1. The Court notes that the United States Court of Appeals for the Seventh Circuit, in addressing Chicago's *ordinance* banning firing ranges within city limits, observed fairly recently that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't

that the threat of arrest may chill another right has been recognized in First Amendment jurisprudence to which this Court must turn for guidance. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) ("Because *Heller* is the first Supreme Court case addressing the scope of the individual right to bear arms, we look to other constitutional areas for guidance in evaluating Second Amendment challenges. We think the First Amendment is the natural choice.").

Rather than addressing this theory, Defendants submit that "[t]here are no averments in the Complaint that allege any type of incident other than Defendant Strimel protecting public safety." (ECF No. 7 at 4). In support, Defendants maintain that "Plaintiff was discharging a firearm in the direction of a very busy interstate (I-79), and Defendant Strimel was merely upholding public safety." (ECF No. 7 at 3). Public safety may have indeed been Strimel's rationale for denying Plaintiff's request, but this defense relies on facts injected into the record without the benefit of discovery. The Complaint does not allege that Plaintiff was discharging a firearm or that Strimel was acting in the interest of public safety. Plaintiff instead avers that Strimel threatened arrest even though he apparently acknowledged there were no restrictions on the intended target shooting. Accordingly, the Court cannot dismiss this claim against Strimel in his individual capacity at this time.

2. Official Capacity

A suit against a state actor in his or her individual capacity seeks "to impose personal liability upon [a state actor] for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). "Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an

---

mean much without the training and practice that make it effective. Several passages in *Heller* support this understanding." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Whether that case has any import one way or the other is left for a later juncture.

officer is an agent." *Id.* (citation omitted). An official capacity suit against a state actor "is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Here, Plaintiff's official capacity claims against Strimel are a restatement of his claims against North Strabane Township. The Court will therefore dismiss the official capacity claims against Strimel but will not grant leave to amend the official capacity aspect of this count as it would be futile.

### C. *Monnell* Claim Against North Strabane

Municipal liability under Section 1983 cannot be based on respondeat superior. In *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." *Id.* at 691. "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir.2003).

State law governs whether a municipal official has final policy making authority. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n. 11 (3d Cir. 2010). "[A]s a matter of Pennsylvania state law, a township police chief does not have final policy making authority." *Dubas v. Olyphant Police Dep't*, 3:11CV1402, 2012 WL 1378694 (M.D. Pa. Apr. 20, 2012) (citing *Santiago*, 629 F.3d at 135 n.11).

The Complaint does not adequately set forth a sufficient basis for *Monell* liability to attach. Plaintiff does not plead that Strimel had policymaking authority or that he directed others to violate Plaintiff's rights. *C.f. Santiago*, 629 F.3d at 135 n.11 ("While [Plaintiff] is correct that, whether Chief Murphy is a final policymaker is ultimately a legal rather than a factual question, that does not relieve her of the obligation to plead in some fashion that he had final policy making authority, as that is a key element of a *Monell* claim."). Accordingly, the Court will dismiss the allegation(s) against Defendant North Strabane Township.

### D. Leave to Amend

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. Accordingly, the Court will grant Plaintiff leave to amend his Complaint other than as noted above.

### IV. Conclusion

Based on the foregoing reasons, the motions to dismiss will be granted in part and denied in part. To briefly summarize the conclusions recited above, the Court notes the following: (1) all claims alleging violations of the Fourth Amendment to the United States Constitution & Article I, § 8 of the Pennsylvania Constitution will be dismissed; (2) the individual capacity claims alleging violations of the Second Amendment to the United States Constitution & Article I, § 21 of the Pennsylvania Constitution Against Strimel may proceed; (3) the official capacity claims alleging violations of the Second Amendment to the United States Constitution & Article I, § 21 of the Pennsylvania Constitution Against Strimel will be dismissed; and (4) all municipal

11

liability claims against Defendant North Strabane Township will be dismissed.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE DEANGELO,** | ) ) ) |
| **Plaintiff,** | ) ) 2:13-cv-407 |
| v. | ) ) ) |
| **NORTH STRABANE TOWNSHIP AND DAN STRIMEL** *in his official capacity as the CHIEF OF POLICE OF NORTH STRABANE TOWNSHIP*, | ) ) ) ) ) |
| **Defendants.** | ) ) |

## ORDER OF COURT

AND NOW, this 29th day of October, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the MOTION TO DISMISS COUNT I OF THE PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE RULES OF CIVIL PROCEDURE (ECF No. 6) filed by Defendant Dan Strimel, in his individual and official capacity as Chief of Police of North Strabane Township, and Defendant North Strabane Township is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the caption in this action is hereby amended as follows:

| | |
|---|---|
| **DALE DEANGELO,** | ) ) ) |
| **Plaintiff,** | ) ) 2:13-cv-407 |
| v. | ) ) ) |
| **DAN STRIMEL** *in his individual capacity*, | ) ) ) |
| **Defendant.** | ) ) |

Plaintiff may file an Amended Complaint on or before November 19, 2013. Defendant(s) shall respond by Answer or Rule 12 motion within fourteen (14) days.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: Joseph C. Francis, Esquire
Email: attyjcfrancis@gmail.com

James R. Jeffries, Esquire
Email: jimmylaw_2002@yahoo.com