IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DALE DEANGELO, | ) |  |
|---|---|---|
|  | ) |  |
| **Plaintiff,** | ) | 2:13-cv-407 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DAN STRIMEL *in his individual capacity*, | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court are the following: the DEFENDANT'S BRIEF IN SUPPORT OF APPLICATION OF THE DOCTRINE OF QUALIFIED IMMUNITY (ECF No. 30) filed by Dan Strimel; and PLAINTIFF'S BRIEF IN OPPOSITION OF APPLICATION OF THE DOCTRINE OF QUALIFIED IMMUNITY (ECF No. 31). Accordingly, the issues have been fully briefed and are ripe for disposition.

### I. Background

#### A. Factual Background

The actions leadings up to this litigation began sometime around July 2012 when Plaintiff sought to engage in target practice with his firearms on a tract of industrial property he privately owns in North Strabane Township. The 185 foot by 82 foot tract is located approximately five-hundred yards from Interstate 79 North Exit #45, commonly referred to as the "Canonsburg Exit." One side of the land faces I-79, but lies roughly eighty feet below the highway with a sixty-foot tall hillside separating the two areas. The land is accessible only by foot and does not contain any roads, paths, or lanes that allow for ingress or egress. According to Plaintiff, if he were to discharge a firearm projectile toward the direction of the sixty-foot tall hillside, there would be no danger of a ricochet or fragmentation striking any motorist, person, or property.

Sometime before July 2012, Plaintiff contends that he "made arrangements and took all necessary and reasonable precautions to ensure that discharging firearms and engaging in target practice on the land would be done in a safe and reasonable manner." (ECF No. 1 at 4). Among his preparations, Plaintiff examined "all relevant Commonwealth statutes, [ ] local ordinances, and relevant regulations" that govern his intended activities. From his reading, Plaintiff concluded that he was legally permitted to discharge firearms on his land.

Plaintiff likewise attempted to contact law enforcement officials from North Strabane Township and the neighboring Borough of Canonsburg to alert them of his intent to "lawfully discharge firearms" on his property. Plaintiff first attempted to contact Defendant Strimel in July 2012 to place the North Strabane police on notice regarding his target shooting should they receive reports of gunshots in the area. Strimel was unavailable at that time, and Plaintiff left a message requesting a return call. Plaintiff also reached out to Canonsburg Police Department Chief R.T. Bell to make him similarly aware of his intended target shooting given the close proximity between the industrial land and the Borough. During their discussion, Bell stated that he would pass along the information to Strimel who would likely call Plaintiff in the near future.

On August 6, 2012, Strimel contacted Plaintiff by telephone to discuss his intended target shooting. During this call, Strimel allegedly acknowledged that he was unaware of any local ordinances or state laws prohibiting the Plaintiff from target shooting. Strimel nonetheless informed Plaintiff that he would promptly be placed under arrest if he discharged a firearm on his land. Plaintiff attempted to explain that other persons or property would not be placed in any danger due to the precautions in place and the landscape of the property, but apparently to no avail. Strimel instead advised that he would charge Plaintiff with a crime, possibly "Recklessly Endangering Another Person," irrespective of whether the target shooting was done in a safe and

lawful manner. Plaintiff made one final attempt to persuade Strimel that no persons would be endangered; however, Strimel again instructed that he would file charges and retorted that "we will let the courts decide."

Plaintiff thereafter consulted with his counsel of record to evaluate his legal options. Plaintiff's attorney contacted the Solicitor for North Strabane in December 2012 who reiterated Strimel's position that Plaintiff would be criminally charged if he discharged a firearm on the property. This lawsuit followed.

**B. Procedural History**

Plaintiff commenced this action on March 19, 2013 by filing a one-count Complaint against Strimel, in his individual and official capacity as Chief of Police of North Strabane Township, and against North Strabane Township (collectively, "Defendants"), in which he alleged municipal liability as well as violations of his Second Amendment and Fourth Amendment rights and the corresponding provisions set forth in Article I, §§ 8 and 21 of the Pennsylvania Constitution. In response, Defendants filed a Rule 12(b)(6) motion to dismiss.

By Memorandum Opinion, the Court granted in part and denied in part the motion to dismiss on October 29, 2013. The Court ultimately (1) granted the motion to dismiss (a) all claims alleging violations of the Fourth Amendment and its state-level analog; (b) the official capacity claims against Strimel; and (c) the *Monnell* claim against North Strabane; (2) denied the motion to dismiss the individual capacity claims arising under the Second Amendment and the Pennsylvania Constitution; and (3) permitted Plaintiff to file a curative amendment.

Plaintiff filed a First Amended Complaint on December 9, 2013 in which he alleges that Strimel violated his rights secured by the Second Amendment to the United States Constitution

3

and Article I, § 21 of the Pennsylvania Constitution. Both theories are once again pled under the umbrella of a single count.

Strimel filed another Rule 12(b)(6) motion to dismiss on December 23, 2013, which Plaintiff opposed. The gravamen of the motion was that Strimel—the then-Chief of Police of North Strabane Township—was not a state actor because Plaintiff has brought this § 1983 suit against him only in his individual capacity.[1]

By Memorandum Order, the Court denied the motion to dismiss on April 10, 2014. In that filing, the Court noted that Plaintiff read Strimel's brief as asserting a qualified immunity defense. The Court did not, however, consider a single conclusory sentence devoid of any legal authority or analysis and which did not actually raise the defense as sufficient to meet his burden to establish qualified immunity. Nevertheless, the Court stated that Strimel may raise the defense of qualified immunity in his responsive pleading.

Strimel filed his Answer to Plaintiffs' Amended Complaint on April 30, 2014 in which he asserts qualified immunity as an affirmative defense. The Court thereafter scheduled its Rule 16 Case Management Conference for June 16, 2014.

At the Case Management Conference, the Court raised and discussed with counsel the issue of qualified immunity.[2] The Court ordered the parties to brief the applicability of the defense, and they timely complied.

---

1. At the Rule 16 Cases Management Conference, the Court learned that Strimel has since retired from his position effective December 31, 2013. The Court also learned that Plaintiff has engaged in target shooting on his property no less than six times without incident since this litigation commenced.

2. The United States Court of Appeals for the Third Circuit has stated that, "[a]t Rule 16 conference, a district court 'may consider and take appropriate action' on a broad variety of topics, including 'formulating and simplifying the issues, and eliminating frivolous claims or defenses.'" *Lassiter v. City of Philadelphia*, 716 F.3d 53, 55 (3d Cir. 2013) (quoting Fed. R. Civ. P. 16(c)(2)(A)). *See also Miller v. Clinton Cnty.*, 544 F.3d 542, 547 (3d Cir. 2008) ("[A]ny claim of qualified immunity must be resolved at the earliest possible stage of litigation.") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Children First Found., Inc. v. Legreide*, 259 F. App'x 444, 445 (3d Cir. 2007) (citing *Thomas v. Independence Township*, 463 F.3d 285 (3d Cir. 2006)).

4

## II. Standard of Review

The doctrine of qualified immunity protects "government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Saucier v. Katz*, the Supreme Court established a two-step sequence that governs whether government officials are entitled to the protection. 553 U.S. 194 (1982). First, a court must ask "whether the facts that a plaintiff has alleged (*see* Fed. R. Civ. P. 12(b)(6), (c)) or shown (*see* Rules 50, 56) make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The sequence in which a court addresses the two steps of this analysis is no longer mandatory, and a court may address the two prongs in any order, at its discretion. *See id.* at 235-36. If the plaintiff does not satisfy either prong, the court must enter judgment in favor of defendant as a matter of law. *Id.* at 232.

## III. Discussion

### A. Second Amendment

For purposes of the second step of the qualified immunity analysis, a right is clearly established "where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Saucier*, 533 U.S. at 202). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Id.* (citing *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006)). The Supreme Court of the United

States has "recently emphasized that '[w]e do not require a case directly on point before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Hinterberger v. Iroquois Sch. Dist.*, 548 F. App'x 50, 52 (3d Cir. 2013) (quoting Stanton v. Sims, 134 S. Ct. 3, 5 (2013)) (citation and quotation marks omitted). Accordingly, "[t]he question is not whether some right has been clearly established at a highly abstract level—for example, the right to bear arms—but 'whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" *Pineiro v. Gemme*, 937 F. Supp. 2d 161, 171 (D. Mass. 2013) (citing *McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir. 1991)).

The scope of the right to bear arms in places beyond the home post-*Heller* has been described as a "vast terra incognita" which has troubled courts since that case was decided. *See United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (Wilkinson, J., as to Part III.B.)); *see also Drake v. Filko*, 724 F.3d 426, 430 (3d Cir. 2013) ("It remains unsettled whether the individual right to bear arms for the purpose of self-defense extends beyond the home.") (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010); *D.C. v. Heller*, 554 U.S. 570 (2008)). "Even at present, [courts] are unsure of the scope of that right." *Burgess v. Town of Wallingford*, -- F. App'x --, 13-2369-CV, 2014 WL 2609632, at *2 (2d Cir. June 12, 2014) (citing *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012)). *See Pineiro*, 937 F. Supp. 2d at 171 ("[T]he legal contours of the asserted right—that is, the constitutional right to carry firearms outside the home for self-defense—were entirely unclear in 2010, and are hardly more defined today."); *see also Nichols v. Brown*, 945 F. Supp. 2d 1079, 1101 (C.D. Cal. 2013).

The Court must, therefore, conclude that it is not yet clear how the Second Amendment applies to situations such as Strimel's interaction(s) with Plaintiff. Given this legal ambiguity, Strimel is entitled to qualified immunity.[3] *C.f. Burgess*, 2014 WL 2609632, at *2.

**B. Article I, § 21**

The remaining claim is premised upon Article I, § 21 of the Pennsylvania Constitution. Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court has discretion to decline to exercise supplemental jurisdiction, however, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court *must* decline to decide the . . . state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis in original)). Finding no such justification, the Court abstains from exercising jurisdiction over the pendant state claim.

**IV. Conclusion**

For the reasons hereinabove stated, the Court finds and rules that Strimel is entitled to qualified immunity as to Plaintiff's federal constitutional claim. The Court also declines to

---

3. The Court recognizes that "it is well established that qualified immunity does not bar actions for prospective relief, such as an injunction or declaratory judgment," and that Plaintiff seeks that form of relief. *Salerno v. Corzine*, 449 F. App'x 118, 123 (3d Cir. 2011) (collecting cases). Moreover, Plaintiff asks this Court to "[e]nter a judgment prohibiting Defendant Strimel from prosecuting and/or harassing and/or punishing the Plaintiff from lawfully discharging a firearm on the aforementioned private property that he owns and maintains within North Strabane Township." (ECF No. 15 at 10). This aspect of his prayer for relief has, however, become moot given Strimel's retirement from the police force.

weigh in as to the exact parameters of the state constitutional claim and will dismiss the remaining claim without prejudice. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE DEANGELO, | ) |
| Plaintiff, | ) ) 2:13-cv-407 |
| v. | ) |
| DAN STRIMEL *in his individual capacity*, | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 21st day of August, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** (1) that Defendant Dan Strimel is entitled to the defense of qualified immunity as to Plaintiff's federal constitutional claim; and (2) that Plaintiff's state constitutional claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: Joseph C. Francis
Email: attyjcfrancis@gmail.com

James R. Jeffries
Email: jimmylaw_2002@yahoo.com
Paul D. Krepps
Email: pdkrepps@mdwcg.com